IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-234-MR-WCM

| JODI BLANTON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | MEMORANDUM AND |
|  | ) | RECOMMENDATION |
| v. | ) |  |
|  | ) |  |
| CARL DUNCAN, | ) |  |
| in his individual capacity, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

This matter is before the Court on Defendant's Motion to Dismiss in Part (Doc. 7), which has been referred to the undersigned for the entry of a recommendation pursuant to 28 U.S.C. § 636.

I. Relevant Procedural Background

On July 28, 2025, Jodi Blanton ("Plaintiff") filed her Complaint. Doc. 1.

On August 25, 2025, Carl Duncan ("Defendant") filed the Motion to Dismiss. Docs. 7, 7-1, 7-2.

Plaintiff has responded and Defendant has replied. Docs. 8, 9.

II. Plaintiff's Allegations and Claims

Defendant, who was a detective with the Shelby Police Department, investigated a series of bank robberies and false bomb threats that occurred in Shelby, Lawndale, and Fallston, North Carolina on June 28, 2005, August 30,

1

2005, and November 4, 2005 (the "2005 Crimes"). Doc. 1 at ¶¶ 17-26; 36-46, 64-70.

In "late 2005 or early 2006" and again in November of 2008, Defendant unsuccessfully sought approval from the District Attorney for Cleveland County to charge Plaintiff with the 2005 Crimes. Id. at ¶¶ 82, 84.

On June 2, 2010, the Federal Bureau of Investigation, which had also been involved in the investigation, concluded there was no evidence to support an arrest, and the cases were closed internally. Id. at ¶ 85.

In 2015, Defendant retired from the Shelby Police Department and, in 2016, joined the Cleveland County Sheriff's Office as a "cold case" detective. Id. at ¶¶ 86, 87.

In 2018, Defendant reopened an investigation into the 2005 Crimes, which investigation "focused exclusively" on Plaintiff. Id. at ¶¶ 88, 90. Defendant interviewed several individuals who knew Plaintiff and her husband and, during those interviews, "made material representations about the investigation" and "portrayed as true" certain "fabricated evidence and falsehoods." Id. at ¶¶ 91-92.

Although Defendant uncovered no evidence linking Plaintiff to the 2005 Crimes, Defendant submitted multiple search warrant applications to North Carolina Superior Court judges in February 2019, seeking the authority to seize Plaintiff's bank records. The applications were accompanied by a sworn affidavit from Defendant that contained fabricated evidence and material misrepresentations and omissions. The judges granted the applications and Defendant executed the warrants. See id. at ¶¶ 95-109.

While no evidence was uncovered that implicated Plaintiff in the 2005 Crimes, Defendant again sought approval from the Cleveland County District Attorney's Office to charge Plaintiff and, in support of that request, created a PowerPoint presentation for a meeting with a Cleveland County Assistant District Attorney, which presentation included fabricated evidence and material falsehoods and omissions. Id. at ¶¶ 111, 112-116. Following that presentation, the Assistant District Attorney approved charging Plaintiff. Id. at ¶ 117.

On May 27, 2020, Defendant prepared a second sworn affidavit, "which contained the same fabricated evidence, material misrepresentations, and omissions as the affidavit he had prepared in early 2019." Shortly thereafter, Defendant submitted his second sworn affidavit to a state Magistrate Judge in support of a request for an arrest warrant for Plaintiff and a search warrant for the residence Plaintiff shares with her husband (the "2020 Search

3

Warrant"). Id. at ¶¶ 118-120. The warrants were issued and, the same day, Plaintiff was arrested on "three felony counts of 'Robbery with a Dangerous Weapon' and two felony counts of 'False Bomb Threat to a Public Building'" (the "Charges"). Id. at ¶ 124.[1]

On June 8, 2020, Plaintiff was indicted on the Charges. Defendant was the sole witness before the Grand Jury, and Plaintiff alleges that Defendant presented the same fabricated evidence, material misrepresentations, and omissions that were included in his first affidavit and in his presentation to the District Attorney's Office. Id. at ¶¶ 125-127.

Plaintiff's case was scheduled for trial during the October 23, 2023 criminal session of Superior Court in Cleveland County, North Carolina. Id. at ¶ 130. However, Plaintiff filed pretrial motions, which were heard by Superior Court Judge J. Lynn Gullett that week and, following a hearing at which Defendant was the sole testifying witness, Judge Gullett issued an oral order dismissing the indictments with prejudice. Id. at ¶¶ 130-134.

On May 18, 2024, Judge Gullett issued a written order memorializing the dismissal of the Charges (the "State Court Order"). Id. at ¶ 139; see also Doc. 7-1 (State Court Order entered in "State of North Carolina v. Jodi Blanton" bearing File Nos. 20CRS52000, 20CRS52008-11).

---

[1] The undersigned infers from the record that the 2020 Search Warrant was also executed on May 27, 2020.

In her Complaint, which was filed on July 28, 2025, Plaintiff asserts six claims: Count I: violation of her due process rights under the Fourteenth Amendment related to the fabrication of evidence and use of false evidence; Count II: violation of Plaintiff's rights under the Fourth Amendment related to an unlawful search without probable cause; Count III: violation of Plaintiff's rights under the Fourth Amendment related to malicious prosecution; Count IV: malicious prosecution; Count V: gross negligence/recklessness; and Count VI: intentional infliction of emotional distress.

### III. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

The statute of limitations "is an affirmative defense, which can be the basis of a motion to dismiss under Rule 12(b)(6)." Dickinson v. Univ. of N. Carolina, 91 F. Supp.3d 755, 763 (M.D.N.C. 2015) (citing Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005)). "However, since a Rule 12(b)(6) motion aims to test the sufficiency of the complaint, and the burden of proving an affirmative defense rests with a defendant, dismissal under Rule 12(b)(6) based on the statute of limitations occurs in 'relatively rare

5

circumstances.'" Id. (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)). "To succeed on a statute-of-limitations defense at this stage, all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" Id. (quoting Goodman, 494 F.3d at 464).

## IV. Discussion

Defendant contends that Counts I, II, V, and VI of Plaintiff's Complaint are time-barred.[2]

### A. The 1983 Claims

The parties appear to agree that the limitations period for Plaintiff's claim for violation of her due process rights related to the fabrication of evidence and use of false evidence (Count I) and her claim for violation of Plaintiff's rights under the Fourth Amendment related to an unlawful search without probable cause (Count II) is three years. See Doc. 7-2 at 7; Doc. 8 at 7. The parties disagree, though, as to when that three-year period began to run.

"Although the applicable state statute of limitations supplies the length of the limitations period in a § 1983 action, the time of accrual of the cause of action is a matter of federal law." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996) (citing Nasim v. Warden, Md. House of

---

[2] The Motion to Dismiss initially included a challenge to Count III. However, in his reply, Defendant withdrew his request to dismiss Count III. Doc. 9 at 6. Accordingly, the Motion to Dismiss pertains only to Counts I, II, V, and VI.

6

Correction, 64 F.3d 951, 955 (4th Cir.1995) (en banc), cert. denied, 516 U.S. 1177 (1996)).

Generally, "'[u]nder federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'" Brooks, 85 F.3d at 181 (quoting Nasim, 64 F.3d at 955); Wallace v. Kato, 549 U.S. 384, 388 (2007) (In general, a claim accrues "when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief.") (citing Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (internal quotation marks and citations omitted)).

However, where "a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." McDonough v. Smith, 588 U.S. 109, 115 (2019).

Further, "[w]hen 'the common law provides a distinctive rule for determining when the limitations period for a particular tort begins to run, a court must consider this refinement in determining when the limitations period for the plaintiff's analogous claim under § 1983 should commence.'" Smith v. Travelpiece, 31 F.4th 878, 883 (4th Cir. 2022) (quoting Owens v. Baltimore City State Attorney's Office, 767 F.3d 379, 389 (4th Cir. 2014)).

7

### 1. Count I: Fabricated Evidence

The Fourth Circuit has stated that "[t]o succeed on a Fourteenth Amendment fabrication of evidence claim, a plaintiff must show that (1) that officers fabricated or omitted material evidence; (2) that he suffered a loss of liberty; and (3) that the loss of liberty was caused by the fabricated evidence." Harris v. Town of Southern Pines, 110 F.4th 633, 645 n.6 (4th Cir. 2024) (citing Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014)).

In this case, Defendant argues that Plaintiff had a present and complete cause of action based on the fabrication of evidence on May 27, 2020 (when Plaintiff was arrested) or, at the latest, on June 8, 2020 (when Plaintiff was indicted).

The Supreme Court has held, however, that "[t]he statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor." McDonough, 588 U.S. at 114; see also Ross v. Campbell, No. 6:19-cv-3564-HMH-JDA, 2020 WL 475307, at *3 n.2 (D.S.C. Jan. 8, 2020) ("There is not a complete and present cause of action to bring a fabricated evidence challenge to criminal proceedings while those criminal proceedings are underway") (internal citations and quotation marks omitted).

Here, the dismissal of the criminal charges in Plaintiff's favor occurred no earlier than October of 2023 when Judge Gullett issued her oral ruling, and Plaintiff's Complaint was filed less than three years later on July 28, 2025.

### 2. Count II: Unlawful Search

Next, Defendant contends that the limitations period for Plaintiff's Fourth Amendment claim based on the 2020 Search Warrant began to run on May 27, 2020 when that warrant was executed.

Plaintiff disagrees and argues that her claim did not accrue at that time because the unlawful search was used to pursue an allegedly malicious criminal prosecution. Specifically, Plaintiff contends that her unlawful search claim and her malicious prosecution claim are inextricably linked and, therefore, that the limitations period applicable to her unlawful search claim did not begin to run until the pending state criminal case was dismissed.

Caselaw from the Fourth Circuit, though, forecloses this argument.

In Smith v. Travelpiece, 31 F.4th 878, 882 (4th Cir. 2022), a law enforcement officer, Michael Travelpiece, obtained and executed a state search warrant for a business. Based on the evidence seized, the business's co-owners were indicted. They later moved to suppress the evidence obtained from the search, claiming that the search warrant lacked probable cause and was overbroad. The court found that the officer's warrant application had omitted material facts that undermined probable cause and included patently

9

misleading representations. Therefore, the evidence was suppressed, and the charges were dismissed with prejudice.

Later, the business and its owners brought a §1983 claim against Travelpiece. The trial court found that the claim, which was filed almost 5 years after the illegal search, was barred by the applicable statute of limitations.

On appeal, the Fourth Circuit affirmed. The court found that the plaintiffs' claim, which was based upon an improper search warrant, directly implicated the Fourth Amendment, id. at 884, that the plaintiffs' claim was most closely analogous to a state law claim for trespass, and that such a claim accrued at the time of the unlawful search. Id. at 886-87. The court explained that because "the Fourth Amendment is concerned with property and privacy—not guilt or innocence—the values of the Fourth Amendment are served by ensuring that a § 1983 plaintiff can vindicate their interests in property and privacy when they are violated, no matter if a prosecution is commenced." Id. at 887.

Significantly, the plaintiffs in Travelpiece argued that even if a Fourth Amendment search claim typically accrues at the time of the search, their particular claim did not accrue until the charges against them were dismissed since their claim "'necessarily threaten[ed] to impugn' their prosecutions." Travelpiece, 31 F.4th at 888.

10

The court disagreed and explained that while the Supreme Court had applied the "favorable termination rule" in cases in which the "appropriate analog was malicious prosecution," Travelpiece was governed by separate precedent – Wallace v. Kato, 549 U.S. 384, 387 (2007) – a case involving a constitutional claim of unlawful seizure of a person where "[e]ven though the particular facts showed that the alleged unlawful seizure would impugn the prosecution," the "Supreme Court rejected the malicious-prosecution analogy and held the tort accrued without favorable termination of a future prosecution." Id. at 888. In addition, the Fourth Circuit stated that

> Wallace rejected the "bizarre extension of Heck" that Plaintiffs ask us to adopt here—"that an action which would impugn *an anticipated future conviction [or prosecution]* cannot be brought until that conviction [or prosecution] occurs and is set aside." 549 U.S. at 393, 127 S.Ct. 1091. Adopting that extension "would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought ... and whether the pending civil action will impugn that [prosecution]." Id. If accrual depends on the prosecutor's conduct after the completion of the constitutional violation, § 1983 plaintiffs are left to a guessing game of if, or when, their claims will ever accrue.
>
> Id.

Consequently, Plaintiff's § 1983 unlawful search claim accrued at the time of the search in 2020 and, therefore, is untimely.

11

## B. State Law Claims (Gross Negligence and Intentional Infliction of Emotional Distress)

The statute of limitations for Plaintiff's claims of gross negligence and intentional infliction of emotional distress is three years. See N.C. Gen. Stat. § 1-52(5) ("Within three years an action . . . for any other injury to the person or rights or another, not arising on contract . . . ."); Russell v. Adams, 125 N.C. App. 637, 640 (1997) ("Causes of action for emotional distress, both intentional and negligent, are governed by the three-year statute of limitation provisions of N.C. Gen. Stat. § 1-52(5) (1996).").

In general, a plaintiff's cause of action for negligence accrues "as soon as the injury becomes apparent to the claimant or should reasonably become apparent . . . [i]t does not matter that further damage could occur; such further damage is only aggravation of the original injury." Pembee Mfg. Corp. v. Cape Fear Const. Co., Inc., 313 N.C. 488, 493 (1985) (citing Matthieu v. Piedmont Nat. Gas Co., 269 N.C. 212, 215 (1967)).

Similarly, a cause of action for intentional infliction of emotional distress does not accrue "until the conduct of the defendant causes extreme emotional distress." Russell, 125 N.C. App. at 641 (citing Bryant v. Thalhimer Brothers, Inc., 113 N.C. App. 1, 12 (1993), cert. denied, 336 N.C. 71 (1994)).

Here, Defendant contends that these three-year periods began to run on the date of Defendant's last allegedly tortious act, which Defendant identifies

12

as June 8, 2020 (the date Defendant testified before the grand jury). Doc. 7-2 at 14.

In response, Plaintiff argues that the limitations periods for these state law claims did not begin to run until the state criminal case terminated in her favor, under the favorable termination rule set forth in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).[3]

In Heck, an inmate brought a § 1983 claim against county prosecutors and a state police investigator alleging that his conviction had violated his constitutional rights. The Supreme Court found that the "common-law cause of action for malicious prosecution provide[d] the closest analogy" to the claims the plaintiff had brought and noted that "[o]ne element that must be alleged

---

[3] Defendant does not substantively address the application of the Heck favorable termination rule to Plaintiff's state law claims. Instead, Defendant argues that because this Court is exercising supplemental jurisdiction over the state law claims, North Carolina's substantive law provides the applicable accrual rules. See Doc. 9 at 7. It does not appear that the Fourth Circuit has addressed whether Heck's favorable termination rule may apply to state law claims. However, other courts have reasoned that it may. See Evariste v. City of Bos., No. CV 18-12597-FDS, 2020 WL 1332835, at *4 (D. Mass. Mar. 23, 2020) ("[T]here is no obvious reason why the policy goal underlying the favorable-termination rule of Heck—that is, preventing collateral attacks on criminal convictions through civil suits—should not 'apply with equal weight to state-law claims.'") (citations omitted); Manos v. Hawk, No. 3:14-CV-1128-P-BN, 2015 WL 1737257, at *9 (N.D. Tex. Feb. 27, 2015), report and recommendation adopted, No. 3:14-CV-1128-P, 2015 WL 1782217 (N.D. Tex. Apr. 16, 2015) ("Although typically applied in the context of Section 1983, Heck's logic extends outside of constitutional claims and applies to any claim—including state-law claims—based on factual allegations that are necessarily inconsistent with the validity of a conviction that has been neither reversed, expunged, nor otherwise declared invalid.") (collecting cases).

13

and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." Heck v. Humphrey, 512 U.S. 477, 484 (1994).

The Court went on to hold that:

> . . .in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 486–87 (footnotes omitted).

In closing, the Court noted that under its analysis, "the statute of limitations poses no difficulty while the state challenges are being pursued,

14

since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor…so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489–90 (internal citations omitted).

At least one district court within the Fourth Circuit has applied Heck's favorable termination/accrual rule to a state law claim. In Barnett v. Cabell Cnty. Comm'n, No. CV 3:22-0203, 2023 WL 2602509, at *12 (S.D.W. Va. Mar. 22, 2023), the court considered whether the plaintiffs' claim for intentional infliction of emotional distress based on the defendants' fabrication of evidence, coercion of false statements against them, and provision of false information to prosecutors while withholding exculpatory evidence was barred by West Virginia's two-year statute of limitations. In framing the issue, the court explained that the "favorable termination doctrine"

> prevents litigation of a tort claim which would constitute a "collateral attack on the [plaintiff's] conviction through the vehicle of a civil suit." Goodwin v. City of Shepherdstown, 825 S.E.2d 363, 369 (W. Va. 2019) (quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994)). Under Heck v. Humphrey, 42 U.S.C. § 1983 claims are not cognizable where those claims are challenging the legality of a conviction, and where a favorable adjudication would result in a prisoner's release. 512 U.S. at 488. Instead, Heck holds that the correct remedy to be sought is federal habeas corpus.

15

> Id. Where <u>Heck</u> would have barred a tort claim during the applicable statute of limitations but then a favorable termination occurred, any "cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 490; see also <u>Thompson v. Clark</u>, 142 S. Ct. 1332 (2022) (discussing when a prosecution terminates favorably for the purposes of <u>Heck</u>).
>
> <u>Barnett</u>, 2023 WL 2602509, at *13.

In finding that the limitations period applicable to the plaintiffs' intentional infliction of emotional distress claim did not accrue until the charges against the plaintiffs were dismissed, the court reasoned that the plaintiffs' claim was premised on conduct that "included withholding exculpatory evidence in violation of [<u>Brady v. Maryland</u>, 373 U.S. 83, 87-88 (1963)], and that the "Supreme Court has held that <u>Brady</u> claims are <u>Heck</u>-barred, as 'a <u>Brady</u> claim, when successful postconviction, necessarily yields evidence undermining a conviction.'" <u>Barnett</u>, 2023 WL 2602509, at *14 (quoting <u>Skinner v. Switzer</u>, 562 U.S. 521, 536 (2011)).

Here, Plaintiff's claims for gross negligence and intentional infliction of emotional distress are premised, in part, on Defendant's failure to disclose exculpatory material to prosecutors and judicial officers as well as Defendant's fabrication and use of false evidence. These allegations implicate the proscriptions in <u>Brady</u>. See <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999) ("There are three components of a true <u>Brady</u> violation: The evidence at issue

16

must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."); Griffin v. Baltimore Police Dept., 804 F.3d 692, 695-96 (4th Cir. 2015) (concluding that an inmate's claims asserting alleged Brady violations were Heck-barred because his convictions had not been reversed, expunged, or otherwise declared invalid).

Accordingly, on the current record, the undersigned is not persuaded that Plaintiff's claims of gross negligence and intentional infliction of emotional distress are time-barred.[4]

## V. Recommendation

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss in Part (Doc. 7) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. That Plaintiff's claim alleging a Fourth Amendment violation arising from an unlawful search (Count II) be **DISMISSED**, and

---

[4] Plaintiff has also made arguments under an equitable estoppel theory. However, it is not necessary to reach that alternative argument.

2. That Plaintiff's claim alleging a Fourteenth Amendment Violation arising from the fabrication of evidence (Count I), as well as Plaintiff's state law claims of gross negligence and intentional infliction of emotional distress (Courts V and VI) be **ALLOWED TO PROCEED**, along with Counts III and IV.

Signed: February 12, 2026

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within fourteen (14) days of service of same. Responses to the objections must be filed within fourteen (14) days of service of the objections. Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).